**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSIAH LEE GOTTSCHALL,** | : | **Civ. No. 4:26-CV-1022** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| | : | |
| **ERIC LINDHARDT, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I. Factual Background and Procedural History

This *pro se* case, which comes before us for consideration of motions to dismiss the plaintiff's third amended complaint, (Docs. 55, 57, 58, 59, 61, 71), arises out of contentious domestic relations litigation in the Court of Common Pleas of Lycoming County. (Doc. 1). According to the plaintiff, he has been embroiled in domestic custody and protection proceedings since January of 2025. During the course of those proceedings, Gottschall has decried what he sees as undue delays, judicial bias, counsel misconduct, and lapses in maintaining confidentiality by the court, court officers, opposing counsel, and his own attorney. (Id.)

Gottschall has expressed the subjective belief that the progress of this state court litigation has violated his rights, and this sincere, but subjective, belief forms the basis for his federal civil rights lawsuit. Citing the general federal civil rights

statute, 42 U.S.C. § 1983, and a federal criminal statute, 18 U.S.C. § 241, Gottschall has brought Due Process, Equal Protection, First Amendment and conspiracy claims against the defendants. The various claims have been sweeping in their scope, naming the presiding state judge, prothonotary, his own counsel, opposing counsel, a court stenographer, numerous unnamed courthouse staff, and Lycoming County as defendants. Gottschall's prayer for relief has been similarly far reaching, seeking millions in compensatory and punitive damages along with injunctive and declaratory relief that would, in effect, dictate the result of the state court case.

This case was referred to the undersigned on July 29, 2026. At that time the operative pleading was Gottschall's amended complaint, (doc. 5),[1] and the defendants had filed motions to dismiss this amended complaint. (Docs. 7, 18, 21, 25, 33). Upon consideration, we granted these motions to dismiss, finding that Mr. Gottschall's complaint encounters a cascading array of legal obstacles which combine to defeat the plaintiff's claims. (Docs. 49, 50). However, acting out of an abundance of caution, we granted the plaintiff leave to further amend this complaint in order to endeavor to state a claim upon which relief may be granted. (Doc. 49).

Mr. Gottschall has now filed a third amended complaint. (Doc. 51). This third amended complaint, which is the operative in this case, restates the due process,

[1] A second amended complaint filed by the plaintiff, (doc. 38), was stricken by the Court, (doc. 41), prior to the referral of this case to the undersigned.

equal protection, conspiracy, and institutional civil rights liability claims previously advanced by the plaintiff.[2] The third amended complaint also continues to rely in part upon a federal criminal statute, 18 U.S.C. §241, in making these claims. Citing what he sees as procedural irregularities in these state court proceedings which he believes violated his rights, Mr. Gottschall once again names the presiding state judge, prothonotary, his own counsel, opposing counsel, a court stenographer, numerous unnamed courthouse staff, and Lycoming County as defendants. However, the third amended complaint adds another defendant, a woman named Amy Snyder, who had been appointed by the Court as a guardian and supervisor of the minor child involved in this case during these state proceedings. (Id.)[3]

With respect to these defendants, Mr. Gottschall seeks relief in the form of up to $1,000,000 in compensatory and punitive damages from each defendant; injunctive relief which would effectively set aside the state court judgment including

[2] We note that Mr. Gottschall's third amended complaint also takes umbrage at our prior description of him as a disappointed state court litigant, alleging that this description unduly minimizes his constitutional concerns. (Doc. 51 at 2). We appreciate Mr. Gottschall's concerns and therefore withdraw this characterization of the plaintiff. However, as discussed below, the stark fact remains that these claims still fail as a matter of law and must be dismissed.

[3] The exhibits attached to the third amended complaint suggest that Ms. Snyder is a private person, the aunt of the minor child, and the sister of Mr. Gottschall's partner, who was appointed by the court to oversee communications between and among the parties.

restoration of his contact with this minor child and replacement of any supervisor with what he deemed a "neutral." (Id.)

With Mr. Gottschall's claims framed in this fashion, the defendants have now moved to dismiss this third amended complaint. (Docs. 55, 57, 58, 59, 61, 71). Upon consideration, for the reasons set forth below, these motions will be granted, and this case will be dismissed.

## II. Discussion

### A. Motion to Dismiss—Standard of Review

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal, BU.S.B, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to

dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the Court of Appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied, 132 S. Ct. 1861, 182 L.Ed.2d 644 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263,

268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

It is against these legal guideposts that we assess the sufficiency of the plaintiff's claims.

**B. The Motion to Dismiss Should Be Granted**

In this case, Mr. Gottschall's third amended complaint continues to encounter the same legal obstacles which compelled the dismissal of his prior pleading. The

fatal deficiencies in this pleading, which once again call for the dismissal of the complaint, are addressed separately below.

### 1. The Rooker-Feldman Doctrine Applies Here

At the outset, the plaintiff's prayer for relief in his third amended complaint, which invites us to restore his contact with this minor child and alter the oversight arrangement prescribed by the state courts, inevitably invites us to review, re-examine, and reverse various state court orders in a pending state domestic relations case. This we cannot do. To the extent that the plaintiff urges us, in effect, to sit as a state appellate court and vacate prior state court rulings, the complaint continues to encounter an insurmountable threshold legal obstacle. As we have explained in the past:

> [W]e lack subject matter jurisdiction over the[se] issues . . . , which necessarily invite a federal court to review, re-examine and reject state court rulings in state domestic relations cases.
>
> This we cannot do. Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the Rooker–Feldman doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions. As described by the Third Circuit:
>
>> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme

> Court....". See also Desi's Pizza, Inc. v. City of Wilkes Barre, 321 F.3d 411, 419 (3d Cir.2003). "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions." Desi's Pizza, 321 F.3d at 419.

Gary v. Braddock Cemetery, 517 F.3d 195, 200 (3d Cir.2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he Rooker–Feldman doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication." Turner v. Crawford Square Apartments III, LLP, 449 F.3d 542, 547 (3d Cir.2006). Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

> [E]mphasized the narrow scope of the Rooker–Feldman doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." [Exxon Mobil Corp. v. Saudi Basic Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521–22; see also Lance v. Dennis, 546 U.S. 459, ——, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006).

Id.

However, even within these narrowly drawn confines, it has been consistently recognized that the Rooker–Feldman doctrine prevents federal judges from considering civil rights lawsuits which seek to re-examine state domestic relations court rulings that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." Kwasnik v. Leblon, 228 F. App'x 238, 242 (3d Cir.2007). In such instances, the federal courts have typically deferred to the state court domestic relations decisions, and rebuffed efforts to use federal civil rights laws to review, or reverse, those state court rulings. See, e.g.,

> Marran v. Marran, 376 F.3d 143 (3d Cir.2004); Kwasnik 228 F. App'x 238, 242; Smith v. Department of Human Services, 198 F. App'x 227 (3d Cir.2006); Van Tassel v. Lawrence County Domestic Relations Section, 659 F.Supp.2d 672, 690 (W.D.Pa.2009) aff'd sub nom. Van Tassel v. Lawrence County Domestic Relations Sections, 390 F. App'x 201 (3d Cir.2010) (Rooker–Feldman doctrine operates as a jurisdictional bar to plaintiff's claims if the injuries of which she complains were caused by a state court judgment or ruling which was entered against her); Buchanan v. Gay, 491 F.Supp.2d 483, 487 (D.Del.2007); Rose v. County of York, No. 05–5820, 2007 WL 136682 (E.D.Pa. Jan.12, 2007); Logan v. Lillie, 965 F.Supp. 695, 696 (E.D.Pa.1997) aff'd, 142 F.3d 428 (3d Cir.1998); Behr v. Snider, 900 F.Supp. 719, 721 (E.D.Pa.1995).

Rose v. York Cnty., No. 1:13-CV-2056, 2013 WL 4456220, at *3–4 (M.D. Pa. Aug. 1, 2013), report and recommendation adopted, No. 1:13-CV-2056, 2013 WL 4434748 (M.D. Pa. Aug. 16, 2013).

Simply put, under the Rooker-Feldman doctrine, the plaintiff is not entitled to relief which would necessarily imply the invalidity of state court orders. Gottschall cannot overcome this bar by asserting that the state court orders he challenges are somehow void or illegitimate. The determination of the validity of a state court order is a task for the state courts to decide. The plaintiff cannot urge us in the guise of a federal civil rights lawsuit to serve as some form of *ad hoc* state appellate court ruling on the legitimacy of state court orders. Since this is precisely what the plaintiff urges us to do in his pleading, the injunctive relief sought in this third amended complaint is inappropriate and this prayer for injunctive relief should be dismissed.

**2. The Younger Abstention Doctrine Also Applies Here.**

Beyond inviting us to set aside orders previously entered in the state court litigation, the plaintiff's third amended complaint also seemingly urges us to reach out prospectively and dictate the future course of the litigation by enjoining how the state courts should address ongoing aspects of this domestic relations litigation. To the extent that Gottschall invites us to enjoin state court orders in a pending domestic relations case, this *pro se* pleading still runs afoul of another settled tenet of federal law, the Younger abstention doctrine.

The Younger abstention doctrine is inspired by basic considerations of comity that are fundamental to our federal system of government. As defined by the courts: "Younger abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding." Kendall v. Russell, 572 F.3d 126, 130 (3d Cir. 2009) (citing Younger v. Harris, 401 U.S. 37, 41 (1971) ("[W]e have concluded that the judgment of the District Court, enjoining appellant Younger from prosecuting under these California statutes, must be reversed as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances")).

This doctrine, which is informed by principles of comity, is also guided by these same principles in its application. As the Third Circuit has observed:

> "A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in

> federal court would offend principles of comity by interfering with an ongoing state proceeding." Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir.2005) (citing Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). As noted earlier, the Younger doctrine allows a district court to abstain, but that discretion can properly be exercised only when (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. Matusow v. Trans-County Title Agency, LLC, 545 F.3d 241, 248 (3d Cir.2008).

Kendall, 572 F.3d at 131.

Once these three legal requirements for Younger abstention are met, the decision to abstain rests in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004). Moreover, applying these standards, federal courts frequently abstain from hearing matters which necessarily interfere with ongoing state cases. Lui, 369 F.3d 319; Zahl v. Harper, 282 F.3d 204 (3d Cir.2002). Indeed, the Court of Appeals has expressly applied Younger abstention to state court domestic relations litigation, holding that: "This is precisely the type of case suited to Younger abstention, as the state proceeding implicates the important state interest of preserving the state's judicial system." Lazaridis v. Wehmer, 591 F.3d 666, 671 (3d Cir. 2010).

In this case, the plaintiff's *pro se* complaint reveals that all of the legal prerequisites for Younger abstention are present. First, it is evident that there are state proceedings in this case. Second, it is also apparent that those proceedings

afford the plaintiffs a full and fair opportunity to litigate the issues raised in this lawsuit in these state cases. See Sullivan v. Linebaugh, 362 F. App'x 248, 249–50 (3d Cir. 2010). Finally, it is clear that the state proceedings implicate important state interests, since the state case involves domestic relations matters, an issue of paramount importance to the state. See Lazaridis, 591 F.3d at 671. Since the legal requirements for Younger abstention are fully met here, the decision to abstain rests in the sound discretion of this Court. However, given the important state interest in enforcement of its domestic relations rulings and recognizing that the state courts are prepared to fully address the merits of these matters, we believe that the proper exercise of this discretion continues to weigh in favor of abstention and dismissal of this complaint.

**3. The Anti-Injunction Act Applies Here.**

Additionally, in this latest iteration of his *pro se* complaint Mr. Gottschall seeks an extraordinary form of injunctive relief in that he invites us to enjoin pending state court litigation and prescribe the manner in which the state courts must address his concerns in the future. This prayer for relief encounters yet another immediate statutory hurdle—the Anti-Injunction Act. As the court of appeals has aptly observed:

> That statute reads as follows: "A court of the United States may not grant an injunction to stay proceedings in a State court except [1] as expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments." 28

> U.S.C. § 2283.
>
> The general rule is thus that "an injunction against execution or any other proceeding to enforce a state judgment is forbidden as well as one against the prosecution of state litigation to obtain a judgment." Jos. L. Muscarelle, Inc. v. Cent. Iron Mfg. Co., 328 F.2d 791, 793 (3d Cir. 1964). And while there are three statutorily prescribed exceptions, those exceptions "are to be construed narrowly," In re Diet Drugs, 282 F.3d 220, 233 (3d Cir. 2002), the practical effect of which is that the A-IA "prohibits most federal court injunctions staying state court proceedings," In re Prudential Ins. Co. of Am. Sales Pracs. Litig., 314 F.3d 99, 103 (3d Cir. 2002).

Norton v. Adams, No. 25-2361, 2025 WL 2231797, at *2 (3d Cir. Aug. 1, 2025).

The United States Supreme Court has underscored for us the central role which the Anti-Injunction Act plays in defining the comity owed to state courts in our federal system, explaining that:

> Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy. The explicit wording of § 2283 itself implies as much, and the fundamental principle of a dual system of courts leads inevitably to that conclusion.

Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs, 398 U.S. 281, 297, 90 S. Ct. 1739, 1748, 26 L. Ed. 2d 234 (1970).

On occasion, litigants in state domestic relations cases have turned to the federal courts seeking to enjoin these state proceedings. This litigation has taken many different forms over time, but in light of the statutory and prudential limits set on the exercise of federal courts when it comes to enjoining state domestic relations

proceedings, these efforts have routinely encountered the same fate, rejection by the courts. Thus, a rising tide of caselaw has found that the Anti-Injunction Act bars attempts to enjoin pending state domestic relations cases like these proceedings.[4]

Nonetheless, we are reminded that the Anti-Injunction Act should not be applied in a reflexive or categorical fashion to bar state court injunctions. Norton v. Adams, No. 25-2361, 2025 WL 2231797, at *3 (3d Cir. Aug. 1, 2025). Rather, we must individually assess whether the plaintiffs' claims fall within any of the three narrowly construed statutory exceptions to the Act. Id. at *2. Having conducted this individualized examination, we find that the plaintiff cannot avail himself of any of these narrowly crafted exceptions to the rule forbidding federal injunctions of state court proceedings.

At the outset, it is clear that the Act's third exception—which allows this Court to enjoin state proceedings when necessary "to protect or effectuate its judgments" 28 U.S.C. § 2283—has no application in this case. This exception is plainly inapposite since we have entered no judgments in favor of the plaintiff which need protection through injunctive relief.

[4] Reid v. Luna, No. 23-CV-4818, 2023 WL 8720666, at *1 (E.D. Pa. Dec. 18, 2023); Bonawitz v. Fosko, No. 3:CV-14-0783, 2014 WL 1745890, at *2 (M.D. Pa. Apr. 30, 2014); Steinbronn v. City of Philadelphia, No. CIV. A. 92-3744, 1992 WL 328923, at *2 (E.D. Pa. Oct. 27, 1992).

Likewise, upon reflection, the plaintiff cannot rely on the first narrow exception to the Anti-Injunction Act which allows federal courts to enjoin state legal proceedings when expressly authorized by an Act of Congress. On this score, it bears repeating that, essentially, the plaintiff invites us under the federal civil rights statute, 42 U.S.C. § 1983, to enjoin a state judge to rule in his favor in specific ways in his case. As a § 1983 injunction targeting a state court, this claim is not "expressly authorized by Act of Congress." Quite the contrary, longstanding precedent, and the plain language of § 1983 specifically caution against such injunctions.

In the first instance:

> The Supreme Court long has recognized that judges are immune from suit under section 1983 for monetary damages arising from their judicial acts. See Mireles v. Waco, 502 U.S. 9, 9, 112 S.Ct. 286, 287, 116 L.Ed.2d 9 (1991); Forrester v. White, 484 U.S. 219, 225–27, 108 S.Ct. 538, 543–44, 98 L.Ed.2d 555 (1988); Stump v. Sparkman, 435 U.S. 349, 355–56, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978).

Gallas v. Supreme Ct. of Pennsylvania, 211 F.3d 760, 768–69 (3d Cir. 2000).

Moreover, this longstanding judicial immunity from liability under § 1983 for damages claims has also been extended by Congress to claims for injunctive relief which target state judges. By its terms, this seminal civil rights statute largely forbids such claims, stating that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

> rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, *except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable*.

42 U.S.C. § 1983 (emphasis added).

In this case, notwithstanding the plaintiff's sweeping allegations of systematic abuse by the courts, Mr. Gottschall simply has not alleged well-pleaded facts which would support a finding that a declaratory decree was violated or that declaratory relief is unavailable. Rather, it seems clear that the plaintiff has avenues of declaratory relief available to him through the state court system. Therefore, Gottschall has not made the exacting showing necessary to fall within this narrowly construed exception to the Anti-Injunction Act.

Finally, it cannot be said in this case that the plaintiff may avail himself of the final exception to the Anti-Injunction Act's prohibition against enjoining state court proceedings, an exception that allows federal courts to enjoin state cases where necessary in aid of its jurisdiction. This exception is unavailable to the plaintiff because—as discussed below—his legal claims fail on their merits for a host of reasons.

#### 4. **The Plaintiff May Not Sue Private Parties Under § 1983.**

Beyond these initial concerns, Gottschall's latest federal civil rights complaint remains substantively flawed in yet another crucial respect. Stripped to its essence,

the plaintiff's complaint attempts to bring federal civil rights claims against private parties—including both opposing state court counsel and his own lawyer—for actions taken representing their clients in some state domestic relations litigation. To the extent that the plaintiff seeks to sue private attorneys and law firms alleging federal civil rights violations, he fundamentally misconstrues the reach of the federal civil rights statute upon which he relies, 42 U.S.C. § 1983.

It is well established that § 1983 does not, by its own force, create new and independent legal rights to damages in civil rights actions. Rather, § 1983 simply serves as a vehicle for private parties to bring civil actions to vindicate violations of separate and pre-existing legal rights otherwise guaranteed under the Constitution and laws of the United States. Albright v. Oliver, 510 U.S. 266, 271 (1994); Graham v. Connor, 490 U.S. 386, 393-94 (1989). Therefore, any analysis of the legal sufficiency of a cause of action under § 1983 must begin with an assessment of the validity of the underlying constitutional and statutory claims advanced by the plaintiff.

In this regard, it is also well settled that:

> Section 1983 provides a remedy for deprivations of federally protected rights caused by persons acting under color of state law. The two essential elements of a § 1983 action are: *(1) whether the conduct complained of was committed by a person acting under color of state law*; and (2) whether this conduct deprived a person of a federally protected right. Parratt v. Taylor, 451 U.S. 527, 535 (1981).

Boykin v. Bloomsburg Univ., 893 F.Supp. 409, 416 (M.D. Pa. 1995), aff'd, 91 F.3d

122 (3d Cir. 1996) (emphasis added). Thus, it is essential to any civil rights claim brought under § 1983 that the plaintiff allege and prove that the defendants were acting under color of law when that defendant allegedly violated the plaintiffs' rights. To the extent that a complaint seeks to hold private parties liable for alleged civil rights violations, it fails to state a valid cause of action under 42 U.S.C. § 1983 since the statute typically requires a showing that the defendants are state actors. Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

This principle applies with particular force to civil rights plaintiffs, like Gottschall, who may also invite the courts to consider lawsuits against private attorneys for their roles representing clients in litigation. With respect to this state action requirement, it is well settled that the conduct of an attorney representing a client in a state case does not, by itself, rise to the level of state action entitling a plaintiff to bring a federal civil rights action against counsel. See, e.g., West v. Atkins, 487 U.S. 42, 50 (1988); Polk County v. Dodson, 454 U.S. 312 (1981); Pete v. Metcalfe, 8 F.3d 214 (5th Cir. 1993). Therefore, to the extent that the complaint seeks to sue private attorneys and law firms for federal civil rights violations arising out of their role as counsel in state domestic relations litigation, these claims fail as a matter of law and will be dismissed.

### 5. The Newly Named Defendant, Amy Snyder, Will Be Dismissed

Gottschall's third amended complaint also names a new defendant, Amy Snyder. The complaint indicates that Ms. Snyder is the aunt of the minor child whose custody was at issue in the state case. In the course of these state proceedings, Ms. Snyder was appointed by the court to supervise the minor's custody. In this capacity, Ms. Snyder was called upon to testify at state court proceedings. Liberally construed, Mr. Gottschall's third amended complaint sues this private party for the discharge of her court appointed duties and her testimony in these state proceedings.

With respect to Ms. Snyder, Gottschall's claims encounter three insurmountable legal hurdles. First, private parties like Ms. Snyder who are appointed to temporarily oversee custody of a child typically are not deemed state actors for purposes of § 1983, the governing federal civil rights statute. Thus, a "temporary custodian, is not a state actor for purposes of . . . § 1983 claims." Sinanan v. Child., Youth & Fam. Div., Cnty. of Northampton, Gov't Agency, No. CV 23-2442, 2024 WL 308528, at *6 (E.D. Pa. Jan. 26, 2024), appeal dismissed sub nom. Sinanan v. Child. Youth & Fams. Div. Cnty. of N., No. 24-1218, 2024 WL 3649023 (3d Cir. Mar. 26, 2024). Similarly, "foster parents in Pennsylvania are not state actors for purposes of liability under § 1983." Leshko v. Servis, 423 F.3d 337, 347 (3d Cir. 2005).

Second, to the extent that Ms. Snyder was fulfilling a supervisory duty

imposed upon her by a state court order, she is also cloaked in quasi-judicial immunity. On this score, Ms. Snyder's role was akin to that of a guardian *ad litem* and:

> [A] guardian ad litem is absolutely immune from § 1983 liability when acting as an "integral part of the judicial process." Gardner by Gardner v. Parson, 874 F.2d 131, 146 (3d Cir. 1989) (internal citations and alterations omitted); see also Hughes v. Long, 242 F.3d 121, 127 (3d Cir. 2001) (holding that a guardian ad litem enjoys judicial immunity). Such immunity applies to "exercising functions such as testifying in court, prosecuting custody or neglect petitions, and making reports and recommendations to the court." Id. Because the complained of actions were taken by Defendant Newton in his role as guardian ad litem during B.C.'s dependency proceedings, he is entitled to judicial immunity. See Rieco v. Hebe, 633 F. App'x 567, 569 (3d Cir. 2015) (*per curiam*) (affirming dismissal of claims against guardian ad litem for her role in the state court proceeding that terminated parental rights).

Sinanan, 2024 WL 308528, at *5.

Further, to the extent that Gottschall is attempting to sue Ms. Snyder because she acted as a witness in these state custody proceedings, this claim fails for another reason: witnesses enjoy immunity from liability under the federal civil rights statutes. As the Supreme Court has explained:

> [A] trial witness has absolute immunity with respect to *any* claim based on the witness' testimony. When a witness is sued because of his testimony, . . . , " 'the claims of the individual must yield to the dictates of public policy.' " Without absolute immunity for witnesses, . . ., the truth-seeking process at trial would be impaired. Witnesses "might be reluctant to come forward to testify," and even if a witness took the stand, the witness "might be inclined to shade his testimony in favor of the potential plaintiff" for "fear of subsequent liability."

Rehberg v. Paulk, 566 U.S. 356, 367 (2012) (citations omitted, emphasis in original).

Therefore, any federal civil rights claims premised upon Ms. Snyder's status as a witness in this state case also fail as a matter of law and should be dismissed.

**6. The Plaintiff May Not Use a Civil Case as a Vehicle for a Criminal Prosecution.**

In addition, this third amended complaint cites a federal criminal statute. 18 U.S.C. § 241, and apparently invites us to either imply that this federal criminal statute gives rise to a private right of action or asks us to engage in some form of criminal inquest or proceedings in the context of this civil lawsuit.

As Gottschall now concedes, this we may not do. Quite the contrary, in this regard:

> The Court is guided by the general principle that courts are "reluctant to infer a private right of action from a criminal prohibition alone," especially where the criminal statute is "bare" as to private enforcement. Cent. Bank of Denver v. First Interstate Bank of Denver, 511 U.S. 164, 190 (1994); see also Leeke v. Timmerman, 454 U.S. 83, 86 (1981) (holding that private citizens cannot compel criminal prosecution). To this end, the Third Circuit has repeatedly held that criminal statutes generally do not create private rights of action. See Tezler v. Borough of Englewood Cliffs, 783 F. App'x 253, 257–58 (3d Cir. 2019); Timm v. Wells Fargo Bank, 701 F. App'x 171, 175 (3d Cir. 2017); Coleman v. Academy Bus, LLC, 858 F. App'x 584, 585 (3d Cir. 2021); see also Caterbone v. Lancaster City Bureau of Police, Civil Action No. 18-CV-2710, 2018 WL 3549266 at *3 (E.D. Pa. July 24, 2018) ("Criminal statutes do not generally provide a basis for a litigant's civil claims, and this Court lacks the authority to initiate criminal proceedings.").

Miller v. Nelling, No. CV 22-3329-KSM, 2023 WL 2743564, at *3 (E.D. Pa. Mar. 31, 2023).Therefore, this claim also continues to fail.

**7. The Judge Named in the Third Amended Complaint is Still Immune from Liability.**

Additionally, Gottschall's third amended complaint persists in suing a state court judge for judicial acts; namely, presiding over the plaintiff's state domestics relations, child custody case. This claim also fails because the state court judge who presided over this domestic relations case is immune from civil liability in this case. Thus, to the extent that the plaintiff seeks to hold this judge personally liable for civil rights violations, based upon an alleged failure to act favorably in ruling upon a prior civil case, it is well settled that the judge is individually cloaked with immunity from liability.

The United States Supreme Court has long recognized that those officials performing judicial, quasi-judicial, and prosecutorial functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official capacities. In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, Mireless v. Waco, 502 U.S. 9, 13 (1991); prosecutors, Imbler v. Pachtman, 424 U.S. 409, 427 (1976); and those who perform adjudicative functions, Imbler, 424 U.S. at 423 n. 20 (grand jurors); Harper v. Jeffries, 808 F.2d 281, 284 (3d. Cir.1986) (parole board adjudicators); are entitled to immunity from personal liability for actions they take in our adversarial system of justice.

These longstanding common law immunities apply here and prevent Gottschall from maintaining this civil action against the judge named in this complaint since the judge is entitled to judicial immunity for his actions in these prior proceedings and is absolutely immune from personal liability for any judicial acts. See, e.g., Arsad v. Means, 365 F. App'x 327 (3d Cir.2010); Figueroa v. Blackburn, 208 F.3d 435 (3d Cir. 2000). As we have explained when rejecting similar efforts to impose personal civil rights liability on a judge, this immunity is both broad and absolute:

> "It is a well-settled principle of law that judges are generally 'immune from a suit for money damages.' " Figueroa v. Blackburn, 208 F.3d 435, 440 (3d Cir.2000) (quoting Mireles v. Waco, 502 U.S. 9, 9, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curiam), and citing Randall v. Brigham, 74 U.S. (7 Wall.) 523, 536, 19 L.Ed. 285 (1868)). "The doctrine of judicial immunity is founded upon the premise that a judge, in performing his or her judicial duties, should be free to act upon his or her convictions without threat of suit for damages." Id. (citations omitted). Therefore, "[a] judge is absolutely immune from liability for his [or her] judicial acts even if his [or her] exercise of authority is flawed by the commission of grave procedural errors," Stump v. Sparkman, 435 U.S. 349, 359, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978), and "[j]udicial immunity cannot be overcome by allegations of bad faith or malice" Goldhaber v. Higgins, 576 F.Supp.2d 694, 703 (W.D.Pa.2007). Such immunity can be overcome only where a judge's acts are nonjudicial in nature, or where such actions, while judicial in nature, are "taken in the complete absence of all jurisdiction." Mireles, 502 U.S. at 12.

Catanzaro v. Collins, CIV. A. 09–922, 2010 WL 1754765 (M.D. Pa. Apr. 27, 2010), aff'd, 447 F. App'x 397 (3d Cir. 2011). As the Third Circuit has further explained, "[a] judicial officer in the performance of his or her duties has absolute

immunity from suit. Simply put, '[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Kwasnik v. Leblon, 228 F. App'x 238, 243 (3d Cir. 2007) (quoting Stump v. Sparkman, 435 U.S. 349, 356–57 (1978) (citations omitted)).

This longstanding judicial immunity expressly applies to state court judges when ruling upon child custody cases. Humphrey v. Pennsylvania Ct. of Common Pleas of Philadelphia, 462 F. Supp. 3d 532, 536 (E.D. Pa. 2020). Since the gravamen of Gottschall's allegations against this judge relates to his judicial actions in a child custody case over which the court plainly had jurisdiction, the plaintiff's claims against this judicial defendant fail as a matter of law and must be dismissed.

**8. Courthouse Staff Are Also Entitled to Quasi-Judicial Immunity**

In his third amended complaint, Gottschall also appears to continue to level claims against courthouse staff including the prothonotary, a stenographer, and other unnamed personnel. These various claims, however, encounter yet another common legal obstacle. It is well settled that courthouse staff are also cloaked in immunity for their quasi-judicial functions. As we have noted in this regard:

> [N]umerous courts have held that certain tasks performed by prothonotaries and court clerks are shielded by quasi-judicial immunity. See Marcedes v. Barrett, 453 F.2d 391 (3d Cir.1971) (holding that a prothonotary who allegedly refused to send the plaintiff

> a requested transcript was acting as a "quasi-judicial official"); Lockhart, 411 F.2d at 460 (holding that a prothonotary who was acting under court direction was immune from suit); Locke, 2008 WL 2096815, at *3 (holding that a prothonotary who determined that a motion for reconsideration was not timely filed was performing a discretionary function and was immune from suit); see also Denlinger, 2007 WL 4615960, at *3 (using "court clerks and prothonotaries" as examples of individuals who may be entitled to quasi-judicial immunity); O'Nembo, 2006 WL 3857487, at *2 (same); Hurst, No. 06-146, 2006 WL 1328729, at *6 (D.Del. May 16, 2006) (same); McKnight v. Baker, 415 F.Supp.2d 559, 563 (E.D.Pa.2006) (same).

Conklin v. Warrington Twp., No. CIV.A. 1:06-CV-2245, 2008 WL 2704629, at *9 (M.D. Pa. July 7, 2008). This quasi-judicial immunity is grounded upon and derived from the immunity enjoyed by judges, and acknowledges that:

> In certain circumstances, the doctrine of quasi-judicial immunity insulates from suit those public officials who "perform functions closely associated with the judicial process." Locke v. Caldwell, No. 07-2272, 2008 WL 2096812, at *3 (E.D.Pa. May 16, 2008) (quoting Cleavinger v. Saxner, 474 U.S. 193, 200, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985)). The dispositive inquiry in determining whether to afford an individual quasi-judicial immunity is "the nature of the function performed, not the identity of the actor who performed it." Tucker v. I'Jama, 173 F. App'x 970, 971 (3d Cir.2006). In other words, quasi-judicial immunity attaches when a "public official's role is 'functionally comparable' to that of a judge," Dotzel v. Ashbridge, 438 F.3d 320, 325 (3d Cir.2006) (quoting Hamilton v. Leavy, 322 F.3d 776, 785 (3d Cir.2003)), or when a public official acts "pursuant to court directive," see Lockhart v. Hoenstine, 411 F.2d 455, 460 (3d Cir.1969) (basing the aforementioned rule upon the "manifest unfairness of subjecting one to suit as a consequence of action taken at the direction of officials over whom the individual actor has no power or control"); see also Alexander v. McMonagle, No. 99-1298, 1999 WL 1210844, at *1 (E.D.Pa. Dec.9, 1999) ("Quasi-judicial officers who act in accordance with their duties or at the direction of a judicial officer are immune from suit.")

Id. at *8.

Therefore, to the extent that Gottschall is attempting to sue court staff for performing ministerial functions, these tasks which are an integral part of the judicial process are cloaked in quasi-judicial immunity. These claims fail.

### 9. Gottschall May Not Sue the County Court System

Gottschall also names Lycoming County as a defendant in his third amended complaint and apparently seeks to impute the actions of the Court of Common Pleas to the county itself. This claim warrants only brief consideration. Gotschall may not sue the county for the actions of the state courts for at least two reasons. First, the courts are instrumentalities of state government, not county government. Second, as state agencies, the courts are cloaked in immunity from damages by the Eleventh Amendment to the United States Constitution.

As we have observed in the past:

> These state court agencies, . . ., are defined by statute as arms of the state courts, and are institutions of state government. See, e.g., Walters v. Washington County, No. 06–1355, 2009 WL 7936639 (W.D.Pa. March 23, 2009); Van Tassel v. Lawrence County Domestics Relations Section, No. 09–266, 2009 WL 3052411 (W.D.Pa. Sept.22, 2009). Therefore, individual counties cannot be held liable for the actions of state court judges, who are part of the unified state court system.
>
> Since the courts are institutions of state government, this complaint further runs afoul of basic constitutional rules limiting lawsuits against state agencies and officials. As a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit

> in law or equity, commenced or prosecuted against one of the ... States ....", U.S. Const. Amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and, therefore, also is barred by the Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).
>
> Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The constitutional protections afforded to the states and the state court system under the Eleventh Amendment also expressly apply to the state agencies that are integral parts of Pennsylvania's unitary court system. These court officers and agencies enjoy immunity from lawsuit under the Eleventh Amendment. See, e.g., Walters v. Washington County, No. 06–1355, 2009 WL 7936639 (W.D.Pa. March 23, 2009); Van Tassel v. Lawrence County Domestics Relations Section, No. 09–266, 2009 WL 3052411 (W.D.Pa. Sept.22, 2009). Absent an express waiver of the immunity established by the Eleventh Amendment, all of these agencies, and their employees who are sued in their official capacities, are absolutely immune from lawsuits in federal court.

Rose v. York Cty., 2013 WL 4456220 at *7. Therefore, this claim fails since the courts are branches of state, not county, government and as branches of state government, the court system is immune from liability in federal court pursuant to the Eleventh Amendment to the United States Constitution. Given this settled, constitutionally rooted immunity, Lycoming County will be dismissed as a defendant.

**10. Gottschall's Conspiracy Claim Fails**

Nor can the plaintiff save these otherwise infirm substantive tort claims by cloaking them in the rubric of some form of conspiracy. Gottschall's conspiracy allegations are set forth in a barebones fashion and in a manner that strains credulity. In essence, Gottschall asserts in a cursory fashion that the outcome of this state child custody case was the product of a cabal involving the judge, courthouse personnel, witnesses, and counsel, including his own attorney. Yet, the plaintiff's conspiratorial claims are bereft of any well-pleaded facts.

This will not do. In order to sustain this claim, the plaintiff may not rely upon general vague assertions of conspiratorial misconduct unadorned by specific facts. Instead:

> [T]o maintain a civil conspiracy claim, "[b]are conclusory allegations of 'conspiracy' or 'concerted action' will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred." Flanagan v. Shively, 783 F. Supp. 922, 928 (M.D. Pa. 1992). The plaintiff's allegations "must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each Defendant allegedly played in carrying out those objectives." Id. A plaintiff cannot rely on subjective suspicions and unsupported speculation. Young v. Kann, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991).

Soto v. RE/MAX of Poconos, No. 3:22-CV-528, 2023 WL 2352241, at *6 (M.D. Pa. Mar. 3, 2023). Furthermore, in order to state such a claim:

> The plaintiff must base his or her allegations of a civil conspiracy on an underlying tort. Festa v. Jordan, 803 F. Supp. 2d 319, 326 (M.D. Pa.

> 2011) (Caputo, J.); see McGreevy v. Stroup, 413 F.3d 359, 371 (3d Cir. 2005) (citing Boyanowsky v. Capital Area Intermediate Unit, 215 F.3d 396, 405 (3d Cir. 2000)). "Ultimately, 'only a finding that the underlying tort has occurred will support a claim for civil conspiracy.' " Reese v. Pook & Pook, LLC, 158 F. Supp. 3d 271, 292 (E.D. Pa. 2016) (quoting Alpart v. Gen. Land Partners, Inc., 574 F. Supp. 2d 491, 506 (E.D. Pa. 2008) (quotation omitted)).

Kretulskie v. Madison Nat'l Life Ins. Co., Inc., No. 3:18-CV-1357, 2019 WL 5866694, at *4 (M.D. Pa. Oct. 9, 2019), report and recommendation adopted, No. 3:18-CV-1357, 2021 WL 2478441 (M.D. Pa. June 17, 2021).

Judged by these guideposts, this civil conspiracy claim founders on at least two independent legal grounds. First, the plaintiff has failed to properly allege an underlying tort. Second, the third amended complaint sets forth only conclusory allegations of conspiracy which will not suffice to allege an actionable civil conspiracy. Therefore, this claim fails.

**11. Any Supplemental State Law Claims Should Be Dismissed.**

While Gottschall's third amended complaint seems to rely upon federal claims which we find fail as a matter of law, the dismissal of these federal claims dictates the appropriate course we should follow in addressing the ancillary state law claims that the plaintiff may wish to pursue.

In a case such as this, where the jurisdiction of the federal court was premised on alleged federal claims which are found to be subject to dismissal at the outset of litigation, the proper course generally is for "the court [to] decline to exercise

supplemental jurisdiction over the plaintiff's state law claims." Bronson v. White, No. 05-2150, 2007 WL 3033865, *13 (M.D. Pa. Oct. 15, 2007) (citing 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if- ... the district court has dismissed all claims over which it has original jurisdiction."); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (holding that when federal causes of action are dismissed, federal courts should not separately entertain pendent state claims)). See also Ham v. Greer, 269 F. App'x 149, 151 (3d Cir. 2008) (citing United Mine Workers, 383 U.S. at 726 and Tully v. Mott Supermkts., Inc., 540 F.2d 187, 196 (3d Cir. 1976)) ("Because the District Court appropriately dismissed [the inmate's] Bivens claims, no independent basis for federal jurisdiction remains"). As the Supreme Court has aptly observed:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

United Mine Workers, 383 U.S. at 726 (footnotes omitted).

The basic tenet that we should refrain from needlessly asserting jurisdiction over what are essentially state law claims applies with particular force here where we are asked to re-examine and potentially interfere with prior state court proceedings in the field of domestic relations and child custody. We should approach such issues with great caution given our lack of jurisdiction in this field since:

> The domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees," Ankenbrandt v. Richards, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), because it has long been settled that "[t]he whole subject of the domestic relations of husband and wife ... belongs to the laws of the states, and not to the laws of the United States," Ex parte Burrus, 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890).

Daniels v. Cynkin, 34 F. Supp. 3d 433, 441 (D.N.J. 2014), aff'd, 597 F. App'x 704 (3d Cir. 2015).

Therefore, in the exercise of our discretion, we will decline to assert supplemental jurisdiction over potential ancillary state law domestic relations claims in this case where all potential federal claims brought before us fail as a matter of law. See Payne v. Doe #1, No. 1:22-CV-1876, 2023 WL 3493315, at *5–6 (M.D. Pa. Mar. 27, 2023), report and recommendation adopted, No. 1:22-CV-1876, 2023 WL 3480895 (M.D. Pa. May 16, 2023).

**12. The Complaint Will Be Dismissed With Prejudice**

We recognize that in civil rights cases, *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case, however, Mr. Gottschall was afforded leave to amend his complaint, but to no avail. The plaintiff's third amended complaint is still, on its face, flawed in numerous ways

which cannot be corrected through some more artful form of pleading. Accordingly, at this juncture granting further leave to amend would be futile or result in undue delay. Therefore, the complaint will be dismissed with prejudice.

An appropriate order follows.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: October 26, 2026